# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. HICKS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>H. ROBLES, *ET AL*.<br><br>　　　　　Defendants. | Case No. 1:18-cv-01481-AWI-EPG<br><br>**ORDER GRANTING MOTION TO AMEND (DOC. NO. 42)**<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S FAILURE TO PROTECT CLAIMS AGAINST DEFENDANTS MARTINEZ, JOHN DOE #1, VOONG, ROBLES, SOTELO, AND LUCAS PROCEED AND THAT PLAINTIFF'S REMAINING CLAIMS BE DISISSED WITHOUT PREJUDICE**<br><br>(ECF Nos. 23 and 41) |

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, commenced this civil rights action on October 26, 2018, by filing a Complaint against H. Robles and John Does 1-3, correctional officers at Kern Valley State Prison. Now pending before the Court are Plaintiff's January 29, 2019, and April 8, 2019 motions to amend his Original Complaint. (ECF Nos. 23, 41.) Because the proposed amended complaints state some cognizable failure to protect claims,

1

the Court will GRANT Plaintiff's April 8, 2019 Motion to Amend and screen the First Amended Complaint. (ECF No. 42.) Upon screening the First Amended Complaint, the Court finds cognizable failure to protect claims against Defendants (1) Martinez, (2) John Doe #1, (3) Voong, (4) Robles, (5) Sotelo and (6) Lucas and recommends that those claims proceed. The Court finds Plaintiff's purported excessive force, medical indifference, and property deprivation claims violate Federal Rule of Civil Procedure 20 and recommends that these claims be dismissed without prejudice to Plaintiff's ability to pursue his claims against the improperly-joined Defendants in a separate suit.

## I. BACKGROUND

Plaintiff commenced this civil rights action on October 26, 2018, by filing a Complaint against H. Robles and John Does 1-3, correctional officers at Kern Valley State Prison. (ECF No. 1.) The Court screened the Complaint and found that Plaintiff stated claims against Defendant H. Robles and Defendants John Does 1-3 for failure to protect him from other inmates. (ECF No. 7.) The Court gave Plaintiff leave to file an amended complaint that substitutes the names of John Doe 1-3 with the actual names of the defendants. (*Id.* at 8, n.2.) On January 10, 2019, Plaintiff filed a request for service, in which he identified Defendant John Doe #1 as L. Martinez, a correctional caption, and Defendant John Doe #2 as A. Sotelo, a correctional lieutenant. (ECF No. 10.) The Court issued an order directing the Marshal to serve Defendants Martinez and Sotelo on February 7, 2019. (ECF No. 17.) Defendants Martinez and Sotelo waived service on March 1, 2019.

On January 29, 2019, Plaintiff filed a Motion to Amend his Complaint and a corresponding proposed First Amended Complaint. (ECF No. 23.) The proposed amended complaint does more than identify the "John Doe" Defendants; in addition to naming Martinez and Sotelo, it seeks to add three new Defendants: J. Guzman, A. Lucas, and H. Arreola. (*Id.*) The proposed amended complaint also alleges new causes of action related to excessive force, medical indifference, and property damage.

On March 12, 2019, Defendants filed a Request for Screening of the First Amended Complaint. (ECF No. 36.) The Court granted the request and ordered that Defendants would have thirty days from the issuance of a screening order to file responsive pleadings. (ECF No. 36.)

On April 8, 2019, Plaintiff filed another Motion to Amend. (ECF No. 41.) The April 8, 2019 proposed amended complaint (referred to herein as the "First Amended Complaint") adds four new Defendants. (ECF No. 42.) It also purports to add more detail to the allegations in the January 29, 2019 proposed amended complaint.

## II.  MOTIONS TO AMEND

Initially, the Court will grant Plaintiff's April 8, 2019 Motion for Leave to Amend the Complaint. (ECF No. 41).[1] Under Rule 15(a), leave to amend "should be freely granted when justice so requires, "bearing in mind that 'the underlying purpose of Rule 15…[is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Furthermore, the Court "has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith, or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…, [and] futility of amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Defendants do not appear to oppose Plaintiff's motion for leave to amend (subject to the Court's screening of the proposed amended Complaint). And the Court finds that the First Amended Complaint states cognizable claims, so amendment is not futile. Given the lack of futility and the liberality with which motions to amend should be granted, the Court will GRANT

---

[1] Both the proposed January 29, 2019 amended complaint and April 8, 2019 proposed amended complaint are before the Court. The analysis herein centers on the April 8, 2019 proposed amended complaint, as it contains all of the allegations in the January 29, 2019 proposed amended complaint, as well as some additional allegations. Furthermore, it is the most recent complaint submitted to the Court. The analysis herein applies equally to the January 29, 2019 proposed amended complaint.

3

Plaintiff's April 8, 2019 Motion to Amend. (ECF No. 41).

Plaintiff's January 29, 2019 Motion for Leave to Amend is DENIED AS MOOT. The First Amended Complaint supersedes the Original Complaint, so the Court conducts its screening analysis without reference to the Original Complaint or the January 29, 2019 proposed amended complaint. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc).

### III.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

4

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal)*.

## IV. ALLEGATIONS IN THE PROPOSED FIRST AMENDED COMPLAINT

The proposed First Amended Complaint (ECF No. 42) elaborates on allegations in the Original Complaint, adds failure to protect allegations against new Defendants covering a broader timeframe, and asserts new causes of action for excessive force, medical indifference, and property deprivation against new Defendants.

### a. Failure to Protect Allegations Similar to Those in the Original Complaint

The First Amended Complaint contains allegations materially the same as the Original Complaint, summarized as follows:

Plaintiff alleges that on May 10, 2018, he appeared before the "D" facility unit classification committee for his initial appearance. Defendant Martinez (listed as John Doe #1 in the Original Complaint) chaired the committee. Plaintiff explained to Defendant Martinez "that due to wide spread knowledge of his sexual convictions amongst STG gang members (25'ers and IR's) that he could not safely remain in his assigned building due to its high percentage of STG gang members." (ECF No. 42. at ¶14.) Plaintiff requested that he be immediately rehoused because he would soon be fully integrated into the inmate population.

Defendant Martinez responded that "25'ers and IR's are everywhere" and denied Plaintiff's request to be relocated to another, "non-STG" building. (*Id.* at ¶15.) Plaintiff was then physically assaulted by an STG 25'er gang member, resulting in serious bodily injury and community hospital admission. After his return to the prison, Plaintiff asked Defendant John Doe #1 to be placed in the Administrative Segregation Unit ("ASU") for non-disciplinary segregation ("NSU"). Defendant John Doe #1 refused this request and re-housed Plaintiff in a designated "STG gang member classified disciplinary program failure housing unit." (*Id.* at ¶17.) Plaintiff was subsequently rehoused in the "D" facility by order of Defendant Martinez three days later.

On May 22, 2018, Plaintiff wrote a "letter of complaint" to Defendant Voong (not named in the Original Complaint), Chief of Inmate Appeals, requesting emergency third level review of

appeal, which complained of Defendant Martinez's actions, noted fear of imminent attack, and requested intercession through ASU placement as "NDS-200." (*Id.* at ¶19.) On June 7, 2018, Defendant Voong refused to treat Plaintiff's correspondence as a staff misconduct complaint or grant an emergency processing interview with Plaintiff; he instead referred the matter back to Defendant Robles, "who lied, stating Plaintiff had no safety concerns." (*Id.* at ¶20.)

On or about June 13, 2018, the Chief Inmate Appeals (presumably Defendant Voong) denied Plaintiff's "enemy concerns" appeal, citing Defendant Robles' contention that Plaintiff had no current enemy concerns. In late July 2018, inmate Keith Craig ("Craig")—an IR gang member—was placed in Plaintiff's cell and "began pressuring Plaintiff to orally copulate him." (*Id.* at ¶23.) On August 10, 2018, Plaintiff advised Defendant Robles that Craig was sexually assaulting him. Robles denied Plaintiff's request for ASU-NDS and instead placed Plaintiff in ASU.

On September 29, 2018, Plaintiff was physically assaulted at evening medication release after it was discovered that Plaintiff "snitched" on another inmate. Defendant Robles interviewed Plaintiff following this assault. Despite clearly visible physical injuries, Defendant Robles denied Plaintiff's request for ASU-NDS placement, even though the attacker lived just two cells from Plaintiff and was questioned concerning the assault.

**b.      Failure to Protect Allegations Not Present in Original Complaint**

Additionally, Plaintiff alleges that Defendant Robles sent Plaintiff out of the prison for a "community sexual assault investigation." (*Id.* at ¶24.) When Plaintiff returned, he asked Defendant John Doe #1 to be placed in ASU-NDS, noting that he would be stabbed by Craig's fellow STG gang members if returned to his cell. Defendant John Doe #1 denied the request. The following day, an inmate attempted to slice Plaintiff with a razor blade.

In late September or early October (Plaintiff does not provide an exact date), Plaintiff, "fearing for his safety" set a fire to a blanket triggering an emergency alarm. Defendant A. Sotelo (named as John Doe #3 in Plaintiff's Original Complaint) responded to same. (*Id.* at ¶29.) Plaintiff explained why he set the distress fire, but Defendant Sotelo still did not order Plaintiff removed from his current cell. The next day, after an interview with the Kern County District

6

Attorney, Plaintiff consented to providing state's evidence in a case involving a 25'er gang member who had previously attacked Plaintiff on May 10, 2018. However, Plaintiff expressed concern that the inmate he agreed to testify against would continue to be housed in Kern Valley State Prison ASU and that Plaintiff was currently housed in the same building containing a high percentage of STG 25'er and IR gang members.

Plaintiff then met again with Defendant Sotelo and explained the "course of events" that had occurred since May 10, 2018, and again requested ASU-NDS placement. Defendant Sotelo denied the request but gave Plaintiff the option of returning to his former cell after the most recent attacker had been removed from the facility or remaining in his current cell among STG gang members. Defendant Sotelo also advised Plaintiff that if he set another fire, regardless of the reason, he would "order responding staff to use the building fire hose on Plaintiff." (*Id.* at ¶32.) Plaintiff opted to remain in his current cell and requested that his cell "be placed on confined to quarters status"—a request that was "mostly granted." (*Id.*)

On October 8, 2018, Plaintiff submitted an emergency grievance to Defendant A. Lucas (not named in the Original Complaint) "citing enemy concerns." Plaintiff alleges that Defendant Lucas failed to respond to the appeal in a timely manner and subsequently denied ever receiving the appeal.

On or about October 22, 2018, Plaintiff was again assaulted by an IR associate while en route to a dental appointment. From October 22, 2018, to December 24, 2018, Plaintiff was confined to his cell due to constant threat of attack by STG gang members.

Plaintiff further alleges that he was targeted to be stabbed on December 20, 2018, because he was a known sex offender. He managed to submit another emergency appeal for "enemy concerns" that day and again requested immediate ASU placement. Defendant Lucas failed to respond to the appeal

On December 24, 2018, Plaintiff observed a stabbing weapon being given to two inmates with instructions to rush into Plaintiff's cell and stab him to death. That same day, at 2:30, Plaintiff showed a note to Defendant J. Guzman (not named in the Original Complaint) that

stated, "I'm about to be stabbed. I need to lock up. Please pull me out so I can talk to you." (*Id.* at 39.) Defendant Guzman read the note, smiled at Plaintiff, and walked away.

   **c. Excessive Force, Medical Indifference, and Property Deprivation Allegations not Present in the Original Complaint**

On December 24, 2018, Plaintiff, "in fear of his life," shoved two shirts under his cell door and set them on fire. (*Id.* at ¶40.) Defendant Guzman responded with the fire extinguisher and totally extinguished the fire. Defendants Sotelo, Areola (not named in the Original Complaint), Stinson (not named in the Original Complaint), and Kyt (not named in the Original Complaint) joined Defendant Guzman in response to the fire. Even though the fire had been extinguished, "a responding officer" turned on the fire hose. (*Id.* at ¶42.) The hose doused some of the respondents as they tried to regain control of the hose. Plaintiff turned his back to the cell door and extended his hands behind his back and outside the cell door to be placed in handcuffs. The officers applied handcuffs and extracted Plaintiff from his cell without resistance. Then, the responding officers spun Plaintiff around and tripped him in a "take down" move, slamming him onto the concrete floor. (*Id.* at ¶43.) "The above-named staff" then placed the fire hose directly in Plaintiff's face and attempted to drown him while other responding staff punched him in the face, stomped, and kicked him while he was on the floor.[2] (*Id.* at ¶43.)

  The force caused physical injury. A nurse determined that Plaintiff's eye required suturing to close the cut, along with further medical evaluation. Plaintiff was referred to the main triage treatment area. Instead of providing immediate medical care, Defendant Arreola escorted Plaintiff to the "D" facility program office to Defendant Sotelo. "Plaintiff's complaints of dizziness and pain were disregarded by both Defendants Arreola and Sotelo." (*Id.* at ¶44.) Plaintiff explained that Defendant Guzman had ignored his urgent concern about being stabbed; accordingly, Plaintiff felt compelled to set the fire outside his cell door as an "emergency measure." (*Id.* at ¶46).) Defendant Sotelo confirmed this with Defendant Guzman and then placed Plaintiff in ASU for safety concerns.

---

[2] The "above-named staff" appears to reference Defendants Guzman, Sotelo, Arreola, Stinson, and Kyt. *See Id.* at ¶38-43.

8

Plaintiff requested to return to his cell to "roll up" his personal property. (*Id.* at ¶48.) Defendant Sotelo informed Plaintiff that all his property had suffered water damage and would not be returned to Plaintiff. Defendant Arreola then showed Plaintiff two photographs of his cell showing "papers, books, and cosmetics scattered on the cell floor as well as water on the floor." (*Id.* at ¶49.) Defendant Sotelo then informed Plaintiff that he wished to conduct an "excessive force camera interview." (*Id.*) Defendant Sotelo asked Plaintiff whether the officers used excessive force on Plaintiff. Plaintiff, "fearing further assault by custody staff, or that he would be returned to his cell rather than ASU, stated that no excessive force had been used upon him, [sic] he was also later compelled to sign a CDC-128 Chrono, claiming that his injuries were the result of a slip and fall in the water." (*Id.* at ¶50.)

Plaintiff later recanted his earlier excessive force interview and requested a second interview. Defendant Robles conducted the second interview on or about January 8, 2019. "Plaintiff has filed staff complaints requesting photo's [sic] be taken of the inside cell door, wall and floor as well as a polygraph examination into the use of unnecessary force resulting in serious bodily injury." (*Id.* at ¶54.)

### d. LAW AND ANALYSIS

#### a. Failure to Protect Claims

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety. *Id.* at 834. "'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer,* 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad,* 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at

847). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,…and a factfinder may conclude that a prisoner official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Here, Plaintiff's First Amended Complaint states a cognizable failure to protect claim against Defendants (1) Martinez, (2) John Doe #1, (3) Voong, (4) Robles, (5) Sotelo, and (6) Lucas.

As to Martinez, Plaintiff told Martinez that he needed different housing due to a high percentage of 25'er and IR gang members in his building who knew that he was a sexual offender. Martinez dismissed the concerns and took no action. Plaintiff was physically assaulted shortly thereafter.

As for Defendant John Doe #1, Plaintiff alleges that he requested Administrative Segregation Unit ("ASU") for Non-Disciplinary Segregation ("NDS") following the first assault. But John Doe #1 denied this request and instead rehoused Plaintiff among 25'er gang members in the "C" facility. Defendant Martinez ordered Plaintiff rehoused in the "D" facility three days later. The next assault occurred sometime in late July at the hands of Craig, an IR member. Following the Craig assault, Plaintiff again requested ASU-NDS placement from John Doe #1; the request was denied and the next day an inmate attempted to slice Plaintiff with a razor blade.

As to Defendant Voong, Plaintiff wrote a letter requesting emergency third level review of an appeal that complained of Defendant Martinez's actions (i.e. failure to protect Plaintiff) and noted fear of an "imminent attack" and requested intercession. Defendant Voong simply referred the matter back to Defendant Robles without acting. Plaintiff was later assaulted by Craig.

Turning to Defendant Robles, Plaintiff contends that he met with Robles after Craig assaulted him. Despite clearly visible physical injuries, Robles informed Plaintiff that he would be returned to his cell even though the assailant lived just two cells away. Plaintiff was later assaulted by an IR member.

Plaintiff then submitted an emergency grievance to Defendant A. Lucas on October 8, 2018, citing enemy concerns. Defendant Lucas failed to timely respond. Plaintiff was thereafter

physically assaulted by an IR associate. Finally, Plaintiff alleges that Defendant Sotelo, aware of previous attacks, refused Plaintiff's request for ASU-NDs placement, instead offering Plaintiff the option of returning to his former cell (with a previous attacker removed from the facility) or to remain in his current cell amongst STG gang members. Plaintiff was later physically assaulted again.

Although the links between some of the Defendants' alleged failures to act and the subsequent assaults are tenuous, liberally construed in favor of Plaintiff, these allegations sufficiently state that the above Defendants knew of a substantial risk of harm to Plaintiff but failed to act reasonably considering that risk, causing injury to Plaintiff. *See Labatad,* 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847).

The Court does not find that the First Amended Complaint states a failure to protect claim against the remaining Defendants and recommends that any such claims be dismissed. Plaintiff alleges that Defendant Guzman failed to act after Plaintiff told him that he was about to be stabbed by another inmate. However, Plaintiff does not allege that he was assaulted or otherwise suffered physical harm because of Defendant Guzman's failure to act; thus, under the Prison Litigation Reform Act, Plaintiff cannot recover compensatory damages for this alleged failure to protect. *See* 42 U.S.C. § 1997e(e); *see also Wolff v. Hood*, 242 F.Supp.2d 811, 817-18 (D. Or. 2002) (dismissing inmate's failure to protect claim in the absence of an allegation of physical injury).

Turning to Defendants Arreola, Stinson, and Kyt, the allegations against them concern excessive force, and not a failure to protect. Those excessive force claims are addressed below. Finally, Plaintiff's only allegation against Defendant Lee is that he told Defendant Robles that Plaintiff had no enemy concerns, causing the "Chief Inmate Appeals" to deny Plaintiff's appeal. Plaintiff does not allege that "[Defendant Lee] [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at 837. Because Plaintiff fails to allege Defendant Lee's deliberate indifference, the Court recommends dismissing Plaintiff's failure to protect claim against him.

11

**b. Excessive Force, Medical Indifference, and Property Deprivation Claims**

Here, Plaintiff's proposed First Amended Complaint, because it seeks to add new defendants, must also satisfy the requirements of Rule 20(a)(2) of the Federal Rules of Civil Procedure in addition to Rule 15(a). *See* 4 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 20.02 (3d ed. 1999) (stating that a plaintiff, in seeking to join additional parties, "must seek leave to amend [and] Plaintiff has the burden of demonstrating that the proposed restructuring of the litigation satisfies both requirements of the permissive party joinder rule."); *see also U.S. v. Undetermined quantities of an article of food, cheese, labeled in part, Estrella Family Creamery (Red Darla),* 2011 WL 6012501, at *1 (W.D. Wash. Dec. 1, 2011) (same). Indeed, "'[t]he Ninth Circuit 'differentiate[s] between pleadings attempting to amend claims [and] those seeking to amend parties,' and Rule 15 is construed less liberally when new parties are proposed.'" *North Face Apparel Corp. v. Dahan,* 13-04821, 2014 WL 12596716 at *4 (C.D. Cal. March 14, 2014) (quoting *Union Pacific R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991)). Under Rule 20, a plaintiff may not bring unrelated claims against unrelated parties in a single action. *See, e.g.*, Fed. R. Civ. P. 18(a), 20(a)(2). Federal Rule of Civil Procedure 20(a)(2) states:

(a) Persons Who May Join or Be Joined.

(2) Defendants. Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem—may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions of occurrences; and

(B) any question of law or fact common to all defendants will arise in the action

Fed R. Civ. P. 20. "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Coe v. Yates*, 07-cv-00683, 2009 WL 734044 at *2 (E.D. Ca. March 17, 2009) (quotation omitted). "Unrelated

12

claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." *Id.*

The Court finds that the failure to protect claims against newly-added Defendants Lucas, Voong, Lee, and Guzman satisfy Rule 20(a)(2). This is so because the failure to protect claims against these Defendants arise from a pattern of failures to protect Plaintiff from other inmates. *See Hubbard v. Houghland*, No. 09-0939, 2010 WL 1416691 at *7 (E.D. Cal. Apr. 5, 2010) ("The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim, claims that arise out of a systemic pattern of events' and have a 'very definite logical relationship.'" (quoting *Bautisa v. Los Angeles County*, 216 F.3d 837, 842-43 (9th Cir. 2000)). Moreover, common questions of fact and law—such as whether Plaintiff was actually assaulted and what these Defendants knew about the risk of harm to Plaintiff—pervade the failure to protect claims.

But the First Amended Complaint also attempts to allege excessive force claims against Defendants Arreola, Sotelo, Stinson, Guzman, and Kyt stemming from an incident in which Plaintiff set a fire in his cell due to fear that he might be assaulted again, along with claims for medical deprivation and property deprivation. These latter claims do not arise from the same transaction or series of transactions as the failure to protect claims against the other Defendants. Instead, the excessive force, medical indifference, and property deprivation claims all stem from an event occurring days after the latest failure to protect allegation in which officers, not other inmates, physically harmed Plaintiff. Because the allegations against proposed new Defendants Arreloa, Stinson, and Kyt, do not "arise" from the same "transaction" or "series of transactions" as the failure to protect claims against the other Defendants, the joinder of Arreola, Stinson, and Kyt is inappropriate under Rule 20(a)(1).

Moreover, looking at Rule 20(a)(2)(B), the failure to protect claims against Defendants Martinez, John Doe #1, Robles, Voong, Sotelo, Lucas, Lee, and Guzman present different factual

and legal questions than the excessive force claims against Arreola, Stinson, and Kyt. The same is true of the medical indifference and property deprivation claims.

Accordingly, The Court will recommend that Plaintiff's excessive force, medical indifference, and property deprivation claims be dismissed for failure to comply with Rule 20(a)(2). The Court further recommends that the dismissal be without prejudice to Plaintiff's ability to pursue the claims against the improperly-joined defendants in a separate suit.[3]

### e. CONCLUSION AND ORDER

Based on the foregoing, the Court GRANTS Plaintiff's April 8, 2019 Motion to Amend Complaint. (ECF No. 42). The January 29, 2019 Motion to Amend is DENIED AS MOOT. The Court has screened the First Amended Complaint and for the reasons herein, the Court HEREBY RECOMMENDS that:

1. The failure to protect claims against Defendants Martinez, John Doe #1, Voong, Robles, Sotelo, and Lucas proceed to discovery;
2. Plaintiff's failure to protect claims against Defendants Guzman and Lee be dismissed without leave to amend to cure the deficiencies noted herein, as the Court has already granted leave to amend and further amendment would be futile; and
3. Plaintiff's excessive force, medical indifference, and property deprivation claims against Sotelo, Arreola, Stinson, and Kyt be dismissed without prejudice to Plaintiff's ability to file these claims in a separate suit.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\

---

[3] The Court expresses no opinion as to the viability of Plaintiff's claims for excessive force, medical indifference, or property deprivation against the improperly-joined Defendants.

The parties are advised that the failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 10, 2019**

/s/ Erin P. Grozj
UNITED STATES MAGISTRATE JUDGE